Shaw, C. J.
This action is brought in the name of the present plaintiff, on a policy, made by the defendants as a mutual fire insurance company, by which Benjamin Wilde was insured in the sum of $2,000, for seven years, payable to John A. Lowell, the plaintiff, in case of loss. It is not denied, that under all the circumstances in the case stated, if the loss by fire was one for which the defendants’ company is liable, the amount, by the express stipulation of the company, may be recovered by the present plaintiff.
The contract created by the policy of a mutual fire insurance company is a peculiar one, modified not only by the terms of the policy itself, but by the act of incorporation, the by-laws, and the application, required to be made by the assured, as the basis upon which the contract is made. Every person obtaining a policy becomes a member of the company, and not only obtains an indemnity for himself, against loss by fire, but becomes, to a limited extent, bound as insurer, to indemnify others ; and his liability for the performance of that duty to others is a personal obligation, on which he is liable sub modo to be assessed; and this personal obligation is collaterally secured by a lien, in the nature of a mortgage, established by law, on the estate insured. St. 1825, c. 141, § 6; Rev. Sts. c. 37, § 36. The creation of such a relation by such a contract presupposes that the assured is the owner, or has a real, substantial proprietary interest in the estate insured; and that the company have a right to look not only to his personal obligation, but to the collateral security of a real lien on his estate, for the performance of the mutual duties, which are the consideration of his own indemnity. It would seem to follow therefore as a necessary consequence, that if, during the time for which the insurance is made, the assured conveys away and alienes the estate, without at the same time assigning the policy with the assent of the company, in the manner provided by the by-laws, he not only ceases to have any in- *131 insurable interest in the property, in virtue of which its destruction by fire would cause any damage to him, but he would cease to hold that mutual relation to the company, which the subsistence of the interest of mutual insurance supposes.
We do not, however, although there appears to have been an alienation by the nominal assured before the fire, decide the cause against the plaintiff’s right to recover on that ground; some companies, in order to encourage mortgagees to rest more confidently on such a security, provide that the alienation of the estate, by the assured, shall not defeat the right of the mortgagee to recover. But there is another ground on which the court are of opinion that the plaintiff must fail.
Although the plaintiff may sue in his own name, because the defendants have promised to pay him in case of loss, yet it is only in the event of a loss, for which they would be liable to pay, that his title arises. His right is derivative and dependent. The insurable interest was that of Wilde, the contract was with him, and to insure his property; and if, for any cause, the insurance is not available to him, then, although the property is consumed by fire within the time, there is no loss for which the company are liable; and the case in which the plaintiff may claim does not arise.
In the present case, the application was made by Wilde for insurance on his dwelling-houses No. 1, and No. 2, and in answer to the question whether incumbered or not, he represented the estate to be mortgaged to John A. Lowell for $2,000. Upon the substantial truth of the facts thus represented, the validity of the policy depends.
In point of fact, it appears by the case, that at the time of the policy made Wilde, the assured, had no legal title to the estate ; but that he had a bond for a deed, from Lowell, the owner of the land, stipulating on certain conditions to convey the land to him. In virtue of this bond, Wilde had entered upon the two lots, and was erecting houses thereon, when the policy was made. As this constituted an equitable title, perhaps this ought not to be considered as a false representation of title, were the question upon the substantial truth or falsity *132 of the representation; though when the very purpose of the representation is, to enable the party making it to enter into and become a member of a company of proprietors of real estate, and when by the act of doing so, and by the operation of law, he professes to subject his own estate to a real lien, as a security for the performance of a mutual obligation, this might seem to be more doubtful, and would require further consideration. But assuming that a bond to convey estate, and being let into possession, constitute an equitable title, which would reasonably satisfy the representation that he was the owner; the representation went further and stated that this title to the estate, of course including the buildings then in the process of erection upon it, was subject to a mortgage for $2,000. This representation was material, and must be substantially "true. Now, without placing any reliance on the fact that there was no mortgage in form on the estate, but taking the term “ mortgage ” to include lien, charge or incumbrance of any kind, then this representation was not true in form or substance. In looking at the bond for a deed, from I jowell to Wilde, which constituted Wilde’s equitable title, it appears that Lowell had agreed to sell him the land at a stipulated price, and to advance him the sum of two thousand dollars to enable him to build the houses; and the condition of the bond was, that when Lowell should give a deed to Wilde, the latter should mortgage back the whole estate to secure the $2,000, and the purchase-money amounting to about $1,800, and when the deed was afterwards given, by Lowell to Wilde, the latter did mortgage it back, for the $3,800. The case supposes, that the $2,000 was advanced to enable Wilde to build houses, and that it was in fact laid out on the land, and went to enhance the value of the estate pro ta/n*-o. Wilde could only acquire any title to the land, by paying $3,800, or making it a charge upon the land simultaneously with getting a deed of the real estate; or, to state the same proposition in a different aspect, if Wilde had an equitable title, Lowell held the legal title as security for the $3,800, and this sum therefore, was a real lien, an incumbrance on the estate, at the time the policy was made, to nearly double *133 the amount represented, and this was a material misrepresentation, which avoided the policy. This was very probably attributable to misapprehension, or mistake on the part of the assured, and not to any dishonest purpose; still the insurance was made on the faith of the written representation, and it is not relieved or excused by the fact stated, that an agent and director of the company assisted the assured in drawing it up, or drew it up from his statements. It behooves the assured to see for himself, or get a skilful and trustworthy agent to act for him, and not to sign any paper, which is not in fact substantially true, when his important rights, indeed all the benefits of the contract, are dependent upon it.
This renders it unnecessary to consider, whether the alienation of the estate by Wilde, without an assignment of the policy assented to by the company, would defeat the claim of Lowell as mortgagee; or, whether the failure of Wilde or Bowers, or any one else, to pay an assessment laid within the time required would by the by-laws work a forfeiture of the policy. Judgment for the defendants.